UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELIZABETH G. TAYLOR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | ) CASE NO.: 1:14-cv-01118-DML-SEB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
|     Defendant. | ) |

## Decision on Judicial Review

Plaintiff Elizabeth G. Taylor applied in November 2011 for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act, alleging that she became disabled on November 17, 1994, at 14 months of age. Acting for the Commissioner of the Social Security Administration following a hearing held by video conference on February 28, 2013, administrative law judge James G. Myles issued a decision on March 13, 2013, finding that Ms. Taylor is not disabled.  The Appeals Council denied review of the ALJ's decision on May 1, 2014, rendering the ALJ's decision for the Commissioner final.  Ms. Taylor timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Taylor contends the Commissioner's decision must be reversed and remanded because the ALJ failed to fully evaluate a medical opinion in reaching his step three decision and failed to properly evaluate her credibility.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Taylor's specific assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Ms. Taylor is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the

Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

### Analysis

**I.  The ALJ's Sequential Findings**

Ms. Taylor was born in September 1993 and was 18 years old at the time she applied for SSI disability benefits. She alleged her disability began in early childhood due to a cognitive disorder, history of seizures, and kidney disease.

At step one, the ALJ found Ms. Taylor had not engaged in substantial gainful activity. At step two, he found Ms. Taylor had a cognitive disorder that qualifies as

4

a severe impairment, but that her history of seizures and kidney disease are non-severe. Ms. Taylor does not challenge the ALJ's evaluation of her history of seizures and kidney disease. Her assertions of error relate solely to the ALJ's evaluation of whether her cognitive disorder precludes her ability to work.

At step three, the ALJ evaluated Ms. Taylor's cognitive disorder against the listings for "organic mental disorders" at 12.02 and "intellectual disability" at 12.05. He found that neither listing was met or medically equaled. The ALJ next determined Ms. Taylor's residual functional capacity and found she can work at the medium level of exertion with some postural limitations and a restriction prohibiting work around dangerous machinery or unprotected heights. He also limited her to routine, unskilled work at a fourth or fifth grade level, as well as restrictions against "team based work [and] with only occasional, superficial interpersonal contact with the public that is a part of critical job based duties." (R. 15). Ms. Taylor had no past relevant work to evaluate at step four.

At step five, and based on the testimony of a vocational expert, the ALJ determined Ms. Taylor is capable of performing the work requirements of a machine feeder (DOT 699.686-010), assembler (DOT 709.684-014), and hand packager (DOT 920.587-018), and that these jobs exist in substantial numbers in Indiana and the nation. Accordingly, the ALJ found at step five that Ms. Taylor is not disabled. (R. 18-19).

**II.     The ALJ's step three decision is supported by substantial evidence.**

Ms. Taylor's first argument is that the ALJ erred at step three because he did not properly weigh the medical opinion of Dr. Alfred Barrow, the psychologist who conducted an evaluation at the request of the Social Security Administration. Ms. Taylor argues that the ALJ's discussion of Dr. Barrow's psychological evaluation omitted or minimized important parts of his report that provided objective medical support for a conclusion that Ms. Taylor is not capable of performing even simple tasks without repeated instructions or supervision. (Dkt. 22 at p. 14).

Before addressing the substance of this argument, the court finds it appropriate to address the overall structure of Ms. Taylor's arguments. Though Ms. Taylor denominates her challenge to the ALJ's evaluation of Dr. Barrow's opinion as a step three challenge, she does not purport to tie her contentions to any listing— the focus of step three. As noted in the court's recitation of SSA's disability sequential analysis, the step three analysis concerns whether a claimant meets or medically equals all of the requirements of a listing in the Listing of Impairments. If she does, she is entitled to benefits without regard to any analysis under steps four or five, including a determination of the claimant's residual functional capacity. *See Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002). But Ms. Taylor does not cite any particular listing or any particular requirement under any listing she contends the ALJ was required to find was met or medically equaled based on Dr. Barrow's report, alone or in combination with other evidence.

6

Ms. Taylor's arguments instead read like challenges to the ALJ's formulation of an RFC and his ultimate decision at step five, although she does not purport to challenge the RFC determination except insofar as it allows work when Ms. Taylor (and her mother) believe she is not capable of working at any full-time job. In other words, she attacks the ALJ's assessment of the credibility of her belief that she cannot work. The essence of Ms. Taylor's opening brief (and she did not file a reply brief) is that the ALJ could not rationally have found Ms. Taylor can work. But her failure to tie her arguments to a specific step three problem or RFC omission ultimately makes her appeal unsuccessful.

The ALJ's RFC is very restrictive as to intellectual cognition abilities, and it limits Ms. Taylor to working at jobs where a skill level at the fourth or fifth grade is all that is needed. Ms. Taylor does not argue that the jobs described by the vocational expert and ultimately relied on by the ALJ are inconsistent with that level of functioning. And the court's own research shows that at least one of the jobs identified by the VE—machine feeder (for which the VE opined there were 4.300 local positions) requires the lowest level (level 1) in cognitive reasoning, math, and language abilities that exists under the Dictionary of Occupational Titles. The SSA's regulations indicate that persons with a marginal education at the qualitative 6th grade level or less are generally capable of such jobs. *See* 20 C.F.R. § 404.1564(b)(2).

With that background in mind, the court now turns specifically to Ms. Taylor's contentions the ALJ erred in his evaluation of Dr. Barrow's report and erred in his evaluation of her credibility.

## II. The ALJ's omission of some facets of Dr. Barrow's report does not require remand.

Dr. Barrow interviewed Ms. Taylor and her mother, reviewed a Teacher Questionnaire completed in August 2011 by Ms. Taylor's 12th grade math teacher, and administered an IQ test (the Wechsler Adult Intelligence Scale-IV). (*See* R. 251-56). The test results showed a wide disparity between her verbal comprehension (at the low end of borderline intellectual functioning) and her perceptual reasoning (in the average range of intellectual functioning). This disparity suggested to Dr. Barrow that she has a significant learning disability, particularly with regard to language facility and comprehension and a "markedly diminished working memory." He also stated that her "[s]ustained focus and attention . . . appears to be markedly diminished given her digit-span sub-tests." (R. 255). He contrasted these findings with her ability to process new information with speed and accuracy, as evidenced by her scores at only slightly below average for the symbol search and coding sub-tests. (R. 255). He also found she had strengths in non-verbal problem solving ability and perceptual organizational and motor-perceptual coordination abilities. (R. 256). Overall, her profile appeared consistent with a significant learning disability in mathematics and reading. (*Id.*).

The ALJ did not discuss these specific facets of Dr. Barrow's breakdown of the results of the IQ test. He instead emphasized the full-scale IQ score of 75, Dr.

8

Barrow's conclusion that Ms. Taylor has a borderline range of intelligence, and he mentioned positive snippets of the report—those stating that Ms. Taylor had "logical and coherent thought processes" and was "articulate in her verbalizations." The ALJ also noted, twice, that Dr. Barrow did not opine about Ms. Taylor's ability to work. (R. 16-17).

Although the ALJ did not recite the details of Dr. Barrow's evaluation of the IQ testing results (neither mentioning the negative or positive sub-testing evaluations), Dr. Barrow's report was reviewed by a state agency reviewing psychologist (Dr. Gange), who did evaluate whether a listed impairment was met or medically equaled and who did opine about whether Ms. Taylor has the capability to work given the overall written record, including reports about Ms. Taylor's functioning from her mother and a teacher. Dr. Gange concluded no listing was met or equaled and that Ms. Taylor can "understand, remember and carry out simple tasks," relate superficially with co-workers and supervisors, attend to tasks for sufficient periods to complete them, and manage the stresses involved with simple work. (R. 260). The ALJ gave significant weight to Dr. Gange's opinion (which was affirmed by another state agency reviewing psychologist), and found it was consistent with the record as a whole. (R. 17).

Ms. Taylor does not challenge the ALJ's consideration of, or the great weight given to, Dr. Gange's opinion. Indeed, she does not mention this evidence at all in her opening brief, and she did not file a reply brief. But it is this evidence—an opinion by a medical professional who reviewed Dr. Barrow's report—which

9

supplies sufficient support for the ALJ's overall analysis of Dr. Barrow's report and the ALJ's determination at step three that Ms. Taylor is not presumptively disabled under any listing. Dr. Gange's opinion, and its later affirmance by a different state agency psychologist, also supplies substantial evidentiary support for the ALJ's translation of the overall evidence of Ms. Taylor's cognitive functioning into an appropriate RFC. The court must therefore reject Ms. Taylor's argument that the ALJ's failure to discuss specifically the details of Dr. Barrow's testing evaluation requires remand.

### III.   The ALJ's credibility determination is not patently erroneous.

Ms. Taylor also contends that the ALJ's credibility determination was flawed. Because the ALJ evaluates credibility by questioning and evaluating a live witness, the ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong." *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). The ALJ is not required to find a claimant is disabled because she does not think she can work. *Rucker v. Chater,* 92 F.3d 492, 496 (7th Cir. 1996).

Ms. Taylor asserts that the ALJ's finding she is capable of the mental demands of work within the confines of his RFC, despite her belief otherwise, was based on the ALJ's overly optimistic picture of her daily living activities and work accomplishments, and on a failure to give sufficient attention to her difficulties in sustaining mental activities. Her argument is at bottom, however, a request for the court to reweigh the evidence, which it cannot do.

The ALJ did not omit to discuss the factors Ms. Taylor says should have convinced the ALJ to find she is not capable of working. Instead, he contrasted those factors with other evidence indicating Ms. Taylor has the ability to accomplish activities on a daily basis despite her serious and medically-determined cognitive impairment. The fact that Ms. Taylor sometimes needs reminders from her mother to attend to her hygiene appropriately was contrasted with the evidence that she can attend to her hygiene. She also has been taught by her mother to, and can, perform household cleaning chores and make simple meals. She also enjoys playing a certain video game (called the Legend of Zelda), can play it for hours, and has played it enough times that she has taught herself to complete the tasks in the game. Ms. Taylor's work activity at a local library also demonstrated to the ALJ that Ms. Taylor can learn work activities and accomplish them. By the time of the hearing, Ms. Taylor had been volunteering one hour per week at a local library. Her work tasks were simple, and involved folding brochures, cutting slips and notices, and affixing labels to magazines. Though her mother initially provided her with a list to follow at this job and the librarian stated she would be reluctant to add more tasks to Ms. Taylor's job, Ms. Taylor in fact performed well the tasks she was given. The ALJ did not equate Ms. Taylor's daily living activities and work accomplishments with an ability to work full-time. Instead, he found they were evidence that her cognitive impairments do not prevent her from working at all. That same conclusion was reached by the state agency psychologists who reviewed the record and whose opinions were accorded great weight by the ALJ. Again, Dr.

Gange opined: "The evidence suggests that [Ms. Taylor] can understand, remember, and carry-out simple tasks. The claimant can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task[s] for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with simple work." (R. 260)

Ms. Taylor also finds fault with the ALJ's recitation that she graduated from high school. As Ms. Taylor asserts, although she attended high school for four years, she received a "certificate of completion," which is not an academic credential but is a certificate given to intellectually or emotionally-challenged teenagers who completed their high school career and successfully worked toward their Individual Education Plan goals. *See* Dkt. 22-1 (describing Indiana's certificate of completion). Any mistake by the ALJ in characterizing Ms. Taylor's educational level is not grounds for remand, however. The ALJ's RFC, and his hypothetical question to the vocational expert, includes a restriction to jobs for which the work does not require a skill level higher than a fourth or fifth grade education, which is consistent with Ms. Taylor's school records and her IQ testing. (R. 15).

Because substantial evidence supports the ALJ's assessment of Ms. Taylor's credibility and her ability to work, the court cannot find the ALJ's credibility assessment or his RFC (based in part on that credibility assessment) to be patently wrong. The RFC included substantial limitations to accommodate Ms. Taylor's cognitive impairment and difficulties stemming from it. Within the confines of that

12

RFC, the VE opined that there were jobs available in significant numbers in the relevant economy.

## Conclusion

The court's standard of review is very narrow.  The residual functional capacity determined by the ALJ is supported by substantial evidence and is not infected by legal errors or serious misstatements of facts.  With that RFC and based on the testimony of the vocational expert, it was reasonable for the ALJ to decide there are jobs in sufficient numbers in the national economy that Ms. Taylor can perform.  Accordingly, the Commissioner's decision is AFFIRMED.

So ORDERED.

Dated:  September 29, 2015

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system